# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

DR. KEITH F. BELL,
          **Plaintiff,**

     **v.**                              **Case No. 22-C-0227**

THE MILWAUKEE BOARD OF
SCHOOL DIRECTORS and
SHON HARALSON,
          **Defendants.**

---

## DECISION AND ORDER

Plaintiff Dr. Keith Bell brings this action for copyright infringement against the Milwaukee Board of School Directors, which operates the Milwaukee Public Schools ("MPS"), and Rishon Haralson (identified in the complaint as Shon Haralson), the coach of the basketball team at one of MPS's high schools. Bell's claims arise out of Haralson's (and another coach's) retweet of an image that depicts an excerpt from a book published by Bell in 1982. Before me now is defendants' motion to dismiss the complaint for failure to state a claim, their motion for attorneys' fees, and their motion for sanctions under Federal Rule of Civil Procedure 11 and 28 U.S.C. § 1927.

## I. BACKGROUND

Bell alleges that he is the author and copyright owner of a popular motivational book entitled *Winning Isn't Normal*. Bell published the book in 1982 "to critical acclaim, wide distribution, and significant publicity." (Compl. ¶ 15.) He continues to promote and sell the book through multiple websites, such as Amazon.com and his own website, www.winningisntnormal.com. (*Id.*) Within the book is a passage that Bell describes as

"famous." (*Id.* ¶ 16.) The passage, which Bell attaches to his complaint, provides as follows:

> Winning isn't normal. That doesn't mean there's anything wrong with winning. It just isn't the norm. It's highly unusual.
>
> Every race only has one winner. No matter how many people are entered (not to mention all those w o [sic] tried and failed to make cuts), only one person (or one relay) wins each event.
>
> Winning is unusual. As such, it requires unusual action.
>
> In order to win, you must do extraordinary things. You can't just be one of the crowd. The crowd doesn't win. You have to be willing to stand out and act differently.
>
> Your actions need to reflect unusual values and priorities. You have to value success more than others do. You have to want it more. (Now, take note! Wanting it more is a decision you make and act upon - not some inherent quality or burning inner drive or inspiration!) And you have to make that value a priority.
>
> You can't train like everyone else. You have to train more and train better.
>
> You can't talk like everyone else. You can't think like everyone else. You can't be too willing to join the crowd, to do what is expected, to act in a socially accepted manner, to do what's " in." You need to be willing to stand out in the crowd and consistently take exceptional action. If you want to win, you need to accept the risks and perhaps the loneliness ...
> because *winning isn't normal!!*

(Compl. Ex. 2.) In addition to having copyrighted the book containing this passage, Bell has separately copyrighted the Winning Isn't Normal (or "WIN") passage. (Compl. ¶¶ 27 & 34.) Bell alleges that the book has "increased [his] recognition as an authority in his field," and that, as a result of the book and the WIN passage, he "has been invited to speak at conferences, symposia, and other engagements." (*Id.* ¶¶ 17–18.)

A visit to Bell's website at the URL provided in the complaint indicates that Bell sells posters, coffee mugs, and other trinkets that bear either the WIN passage, the

phrase "Winning Isn't Normal" (which Bell has registered as a trademark), or the acronym "WIN." *See* https://winningisntnormal.com/shop/ (last viewed December 21, 2022).[1] The entire WIN passage can be read by mousing over the images of the posters that Bell sells on his website. *See, e.g.* https://winningisntnormal.com/product/w-i-n-12x18-poster-biker/ On the home page of the website, where he advertises the *Winning Isn't Normal* book, Bell boasts that "[t]he separately copyrighted "W.I.N." passage is likely the most read & widely used literary work in history!" https://winningisntnormal.com/.

The plaintiff alleges that, in December 2015, Dave Poltrock, an MPS baseball coach who is not a defendant, used his Twitter account to post a link to a separate Twitter user's post that contained an image of the WIN passage. In January 2017, Poltrock retweeted another Twitter user's post that contained the same image. Finally, on February 20, 2019, defendant Haralson, the coach of the basketball team at an MPS high school, retweeted a similar post by Twitter user Five-Star Basketball. Bell attaches screenshots of the posts to his complaint, two of which I reproduce below:

---

[1] Because Bell explicitly references his website in his complaint, I consider him to have incorporated it by reference; therefore, I may consider its contents without converting the motion to dismiss into a motion for summary judgment. *See United States v. Wood*, 925 F.2d 1580, 1582 (7th Cir. 1991) ("the district court may take into consideration documents incorporated by reference to the pleadings"); *Spy Optic, Inc. v. Alibaba.Com, Inc.*, 163 F. Supp. 3d 755, 763 (C.D. Cal. 2015) (considering website pages cited in complaint when deciding motion to dismiss).



4



The image of the WIN passage is low quality and appears to be a picture of a crumpled sheet of paper on which the passage has been printed. The passage is not attributed to Bell and bears no indication that it has been copyrighted.

In recent years, Bell has been on a quest to purge the Internet of unauthorized reproductions of the WIN passage, which appears to have achieved meme status. In a

5

recent case involving a similar copyright suit filed by Bell, the Fifth Circuit observed that Bell "zealously seeks out and litigates unauthorized uses of the WIN Passage. Between 2006 and 2017, Bell filed over 25 copyright lawsuits. Most of the defendants were public schools or nonprofits, which published the WIN Passage on social media." *Bell v. Eagle Mountain Saginaw Indep. Sch. Dist.*, 27 F.4th 313, 319 (5th Cir. 2022). The present lawsuit continues this pattern. Bell contends that when MPS's coaches retweeted posts containing the WIN passage, both the coaches and MPS committed copyright infringement. He also contends that their conduct violated the Digital Millennium Copyright Act ("DMCA") because the images they retweeted lacked "copyright management information" or "CMI", such as Bell's name and copyright notice. *See* 17 U.S.C. § 1202(b).

Bell alleges that, when he discovered these retweets, he provided notice "via a cease-and-desist letter" to MPS on or around November 27, 2018, and February 24, 2019. (Compl. ¶ 23.) In these letters, Bell "demanded [that] the infringing activities of copying and distribution cease immediately." (*Id.* ¶ 4.) Beyond these allegations, Bell does not describe the contents of his letters, and he does not attach copies of them to his complaint. The defendants have not attached copies of the letters to their motion to dismiss, as they could have,[2] because they have no record of receiving such letters. (Reply Br. at 9 n.5, ECF No. 21.)

---

[2] A court may consider documents attached to a motion to dismiss without converting the motion into one for summary judgment when the document is referenced in the complaint, concededly authentic, and central to the plaintiff's claims. *See, e.g., Santana v. Cook Cnty. Bd. of Rev.*, 679 F.3d 614, 619 (7th Cir. 2012).

Haralson and MPS have filed a motion to dismiss the complaint for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). They raise several grounds for dismissal. First, they contend that the complaint was filed one day after the three-year statute of limitations for copyright and DMCA claims expired in connection with Haralson's post.[3] Second, they contend that the complaint and other information that may be considered on a motion to dismiss show that Haralson's post was a fair use of Bell's copyrighted material, and that therefore the claims for copyright infringement, even if timely, must be dismissed. Finally, the defendants contend that the complaint fails to state a claim for violation of the DMCA because the complaint does not plead facts giving rise to a plausible inference that Haralson retweeted the image of the WIN passage with knowledge that CMI had been removed.

Defendants further argue that, if the court grants the motion to dismiss, it should also award them attorneys' fees under the fee-shifting provision of the Copyright Act, 17 U.S.C. § 505. Defendants have brought a separate motion for sanctions under Federal Rule of Civil Procedure 11 and 28 U.S.C. § 1927 against Bell, Bell's legal counsel, and his counsel's law firm. In this motion, defendants seek two forms of relief: (1) an award of attorneys' fees that would duplicate the award of fees under the Copyright Act but would make Bell's counsel jointly and severally liable for the award, and (2) an order prohibiting Bell from suing any public school or public-school employee for at least two years.

---

[3] Poltrock's posts were made well more than three years prior to when this suit was filed, and Bell does not contend that any claim based on Poltrock's posts would be timely. Thus, I regard Bell as having conceded that the complaint does not state a claim for relief against MPS based on Poltrock's posts.

Defendants' request for sanctions and attorneys' fees is based on Bell's history of bringing allegedly meritless copyright claims against public schools that retweet the WIN passage.

## II. DISCUSSION

### A.     Motion to Dismiss for Failure to State a Claim

To avoid dismissal under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint must, at a minimum, "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. In evaluating a motion to dismiss under Rule 12(b)(6), I must "accept the well-pleaded facts in the complaint as true"; however, "legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011).

### 1.     Statute of Limitations

Defendants initially contend that Bell's claims are barred by the three-year statute of limitations for copyright and DMCA claims. *See* 17 U.S.C. § 507(b). Ordinarily, a court may not dismiss a complaint under Rule 12(b)(6) based on an affirmative defense such as the statute of limitations. *See, e.g., Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004). That is so because "plaintiffs need not anticipate and attempt to plead around all potential defenses." *Id.* However, if the complaint contains all the information necessary to show that a claim is barred by an impenetrable defense, then

8

the court may dismiss the complaint under Rule 12(b)(6). *Id.*; *see also Andonissamy v. Hewlett-Packard Co.*, 547 F.3d 841, 847 (7th Cir. 2008).

Defendants contend that the complaint pleads all the elements of a statute-of-limitations defense. The defendants note that the screenshot of Haralson's retweet was taken on February 23, 2019 (ECF No. 1-2 at 8), which means that Bell learned of the alleged infringement no later than that date, and that the complaint was not filed until February 24, 2022, one day too late.

In response to this argument, plaintiff's attorney submits an affidavit in which he states that he attempted to file the complaint through this court's electronic filing system on February 23, 2022, but that the court's system would not accept his filing. (Aff. of Jay Hamilton ¶¶ 3–7, ECF No. 15-1.[4]) Plaintiff's attorney states that he emailed the complaint to the Clerk of Court after the close of business on February 23, 2022, and that the Clerk did not docket the complaint until the next business day. (*Id.* ¶ 7 & Ex. 2.) The plaintiff argues that, for these reasons, the court should deem the complaint filed on February 23, 2022, or equitably toll the statute of limitations by one day.

The facts sworn to by plaintiff's attorney are not in the complaint, and therefore I may not consider them when deciding the motion to dismiss. However, the plaintiff's argument based on these facts shows that the complaint cannot be dismissed based on the statute-of-limitations defense. It is at least arguable that, if the facts are true, then either the complaint was timely filed, or the plaintiff is entitled to equitable tolling. As noted,

---

[4] Plaintiff's and plaintiff's attorney's "affidavits" are technically declarations, since they are sworn under penalty of perjury but not notarized. But because the declarations are captioned as affidavits, I will cite them as affidavits.

the plaintiff was not required to anticipate the statute-of-limitations defense and plead the facts supporting his arguments in the complaint. Thus, the complaint does not "set forth everything necessary to satisfy the affirmative defense." *Andonissamy*, 547 F.3d at 847. Further factual development would be needed regarding what happened when plaintiff's attorney tried to electronically file the complaint. In any event, as explained below, the complaint must be dismissed for other reasons.

### 2. Copyright Infringement/Fair Use

Defendants do not dispute that the complaint pleads the basic elements of copyright infringement under the Copyright Act. *See* 17 U.S.C. § 106. However, they contend that the complaint also establishes that Haralson's retweet of the Twitter post containing an image of the WIN passage falls within the fair use doctrine. Fair use is an affirmative defense. *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012). However, as noted above, when the complaint contains all the elements necessary to determine whether the affirmative defense applies, the court may dismiss the complaint based on the defense. *Id.*; *Andonissamy*, 547 F.3d at 847. As explained below, I conclude that the complaint establishes that Haralson's retweet was clearly fair use and that therefore the infringement claims against him and MPS must be dismissed.

"The fair-use doctrine balances the 'inherent tension' between copyright's interests in protecting author's works and permitting others to reference them in cultural conversation." *Eagle Mountain*, 27 F.4th at 321 (quoting *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 575 (1994)). Congress codified the fair-use doctrine in the Copyright Act of 1976 and listed four factors that courts should consider when applying it:

(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;

(2) the nature of the copyrighted work;

(3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

(4) the effect of the use upon the potential market for or value of the copyrighted work.

17 U.S.C. § 107. The four factors are not exclusive. *Brownmark*, 682 F.3d at 692. "All are to be explored, and the results weighed together, in light of the purposes of copyright." *Campbell*, 510 U.S. at 578. A fair-use defense can succeed even if one or more factors favor the claimant. *Eagle Mountain*, 27 F.4th at 321. Courts often give the fourth factor (market effect) the most emphasis. *See Kienitz v. Sconnie Nation LLC*, 766 F.3d 756, 758 (7th Cir. 2014). I will address each factor in turn.

### a. Purpose and character of the use

When examining the first fair-use factor, courts generally weigh three "considerations": (1) whether the allegedly infringing use is "transformative"; (2) good or bad faith; and (3) whether the use was commercial or noncommercial. *See Google LLC v. Oracle America, Inc.*, __ U.S. __, 141 S. Ct. 1183, 1202–04 (2021); *Eagle Mountain*, 27 F.4th at 321–22. In assessing whether a use is transformative, a court examines whether the use "adds something new and important." *Google*, 141 S. Ct. at 1203. Here, defendants do not claim that Haralson's retweet added anything new to the work. Indeed, the retweet simply reproduced the WIN passage verbatim. However, the Seventh Circuit has expressed skepticism over the "transformative use" consideration, *see Kienitz*, 766 F.3d at 758, and in any event, as explained below, the other considerations and factors outweigh this consideration.

11

The next consideration, good or bad faith, likewise has little weight in this case. The Supreme Court has "expressed some skepticism about whether bad faith has any role in a fair use analysis." *Google*, 141 S. Ct. at 1204. Bell contends that this factor favors him because MPS did not immediately require Haralson to delete his retweet after Bell sent his cease-and-desist letters. But if Haralson's retweet constituted fair use, MPS had no obligation to make him delete it. *See Campbell*, 510 U.S. at 585 n.18 ("If the use is otherwise fair, then no permission need be sought or granted. Thus, being denied permission to use a work does not weigh against a finding of fair use.").

The final consideration is whether the use was commercial or noncommercial, and this consideration clearly favors defendants. It is obvious that Haralson retweeted the image of the WIN passage to inspire, motivate, or cheer on his student athletes, rather than to profit or otherwise engage in commercial activity. As the Fifth Circuit noted in one of Bell's prior cases, "it is hard to imagine how the school could derive a commercial benefit from that use." *Eagle Mountain*, 27 F.4th at 322.

To show that the first fair-use factor favors him, Bell observes that Haralson's retweet "was made available to a far bigger audience than Defendants' students." (Br. in Opp. at 8, ECF No. 15.) Bell does not elaborate on this point, but I assume he means that Haralson's Twitter page could have been read by anyone with access to the Internet. Even so, Haralson did not charge anyone for access to his Twitter page or otherwise use it for commercial purposes, so the size of the potential audience is not relevant. Bell also argues that "Defendants profited by saving substantial costs from making the book available to its followers without paying the customary price." (*Id.*) This argument is hard to understand, since Haralson did not make the entire book available to his followers, only

Case 2:22-cv-00227-LA   Filed 12/21/22   Page 12 of 27   Document 27

the WIN passage. Further, the WIN passage itself is freely available on the Internet, including on Bell's own website, so Haralson did not make anything available to his followers that was not already available for free to the world at large.

For these reasons, I find that the complaint shows that the first fair-use factor favors defendants.

### b. Nature of the copyrighted work

The second factor "calls for recognition that some works are closer to the core of intended copyright protection than others, with the consequence that fair use is more difficult to establish when the former works are copied." *Campbell*, 510 U.S. at 586. This factor generally recognizes that "fair use is more likely to be found in factual works than in fictional works." *Stewart v. Abend*, 495 U.S. 207, 237 (1990). This factor also considers whether the work is published or unpublished, as "the scope of fair use is narrower with respect to unpublished works." *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 564 (1985).

Here, although Bell's book is a work of nonfiction, the WIN passage bears elements of creativity, in that it "combines and condenses [well-worn athletic truisms] in a particularly inspiring way." *Eagle Mountain*, 27 F.4th at 323. Thus, this consideration favors Bell. On the other hand, the WIN passage is not only published, it is, according to Bell, "famous" (Compl. ¶ 16) and "likely the most read & widely used literary work in history[,]" https://winningisntnormal.com/. Thus, this factor is generally neutral, although, given the passage's creative elements, it might slightly favor Bell. *See Eagle Mountain*, 27 F.4th at 323.

13

### c. Amount and substantiality of the portion used

This factor examines whether the amount and substantiality of the portion used are "reasonable in relation to the purpose of the copying." *Campbell*, 510 U.S. at 586. Here, if the work in question is Bell's entire book, then the amount copied was quite small. On the other hand, Bell claims that the WIN passage is the "heart" of the book, and he notes that he has separately copyrighted the passage itself.

Even assuming that, by retweeting the passage, Haralson copied the heart of the book or the entirety of a copyrighted passage, this factor favors defendants. That is so because it is the entire passage that is inspirational or motivational, and therefore copying the entire passage was reasonable in relation to the fair-use purpose of the copying. Further, as noted above, the entire WIN passage is well known and freely available online, including on Bell's own website, so Haralson did not provide the public with anything that it did not already have free access to. As the Fifth Circuit noted in Bell's prior case, "[i]f an infringing use 'enables a viewer to see such a work which he had been invited to witness in its entirety free of charge, the fact that the entire work is reproduced . . . does not have its ordinary effect of militating against a finding of fair use.'" *Eagle Mountain*, 27 F.4th at 324 (quoting *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 449–50 (1984)).

### d. Effects of defendants' use on the market for the original

The final fair-use factor considers the effect of the use on the market for the original. This factor is generally regarded as the most important. *Kienitz*, 766 F.3d at 758. If the use in question could be substituted for the original work, thereby harming the market for the original, then this factor will generally favor the copyright owner. *Id.* The

14

factor "requires courts to consider not only the extent of market harm caused by the particular actions of the alleged infringer, but also 'whether unrestricted and widespread conduct of the sort engaged in by the defendant . . . would result in a substantially adverse impact on the potential market' for the original." *Campbell*, 510 U.S. at 590 (quoting Nimmer on Copyright). The inquiry "must take account not only of harm to the original but also of harm to the market for derivative works." *Id.* (quoting *Harper & Row*, 471 U.S. at 568).

Bell does not allege that he lost revenue due to Haralson's retweet of the passage. Further, in *Eagle Mountain*, the Fifth Circuit failed to see any "plausible economic rationale to support Bell's assertion that widespread tweeting of the WIN passage would undermine the value of his copyright." 27 F.4th at 324. As the court observed, tweets of the passage are not substitutes for the entire book. *Id.* at 325. Likewise, the tweets are not substitutes for derivative works, such as posters or coffee mugs bearing the WIN passage. *Id.* If anything, "[v]iral sharing of the WIN Passage on Twitter might enhance the notoriety and appeal of Bell's work, thereby increasing the incentive to purchase products displaying it." *Id.*[5]

In his brief, Bell makes almost no effort to show that posting the WIN passage on Twitter harms the market for his book or for derivative works displaying the passage. He simply asserts in conclusory fashion that posting the passage "has great adverse effects

---

[5] I recognize that, unlike the school in *Eagle Mountain*, MPS did not retweet a version of the WIN passage that indicated it was written by Bell. However, the lack of attribution did not cause the tweet to harm Bell's market, since the tweet itself was no substitute for anything that Bell was selling or could plausibly sell. Moreover, the tweet likely still provided some marketing benefit to Bell, in that a person who saw the tweet could easily find Bell's online shop by typing "Winning Isn't Normal" into an Internet search engine.

on Plaintiff and the market for his work." (Br. in Opp. at 9, ECF No. 15.) In the Fifth Circuit, Bell made more of an effort, arguing that "the tweets might impact his ability to license similar uses of the WIN Passage." *Eagle Mountain*, 27 F.4th at 325. However, the Fifth Circuit concluded that there was no plausible market for licensing the WIN passage to noncommercial Twitter users such as public schools and their coaches. *Id.* Bell does not argue that the Fifth Circuit was wrong on this score. He does not, for example, claim that "anyone has ever purchased a license before posting the WIN Passage on social media." *Id.* Indeed, the transaction costs associated with such licensing would far outweigh the value of the post, at least to noncommercial users such as public schools and their coaches who take to Twitter to celebrate their team's win or inspire their student athletes. *See Ty, Inc. v. Publ'ns Int'l Ltd.*, 292 F.3d 512, 518 (7th Cir. 2002) (noting that copying is fair use when "the copyright owner [cannot] command a license fee commensurate with the costs of transacting with the copier").

Accordingly, the fourth and most important factor clearly favors a finding of fair use.

### e. Fair Use Conclusion

Having considered the relevant factors, I conclude that the complaint establishes that Haralson's retweet was a fair use of the WIN passage. The use was entirely noncommercial and could not plausibly harm the market for Bell's original works or their derivatives. Although Haralson copied the entirety of a somewhat creative passage, these factors are offset by the fact that the passage itself was already freely available on the Internet, including on Bell's own website. As the Fifth Circuit found, "[i]n both their number and importance, the statutory factors show that the school's tweets were fair use." *Eagle Mountain*, 27 F.4th at 325; *see also Bell v. Worthington City Sch. Dist.*, No. 2:18-cv-961,

16

2020 WL 2905803, at *10–11 (S.D. Ohio June 2, 2020) (finding coach's posting of WIN passage on Twitter fair use). Accordingly, Bell's claims for copyright infringement will be dismissed.

### 3. Digital Millennium Copyright Act

In his remaining claim, Bell alleges that Haralson and MPS violated the DMCA by retweeting an image of the WIN passage that lacked copyright management information ("CMI"), such as the name of the copyright owner and the copyright notice. Bell brings this claim under a provision of the DMCA that relates to the removal or alteration of such information. *See* 17 U.S.C. § 1202(b). That provision provides, in relevant part, as follows:

> No person shall, without the authority of the copyright owner or the law—
>
> (1) intentionally remove or alter any copyright management information, [or]
>
> . . .
>
> (3) distribute, import for distribution, or publicly perform works, copies of works, or phonorecords, knowing that copyright management information has been removed or altered without authority of the copyright owner or the law,
>
> knowing, or . . . having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement of any right under this title.

*Id.* In the present case, Bell does not allege that Haralson or MPS removed or altered any CMI. Instead, Bell alleges that Haralson and MPS "distribute[d]" his work on Twitter with knowledge that CMI had been removed without the authority of the copyright owner or the law, in violation of § 1202(b)(3).

The DMCA contains a "double scienter" requirement, under which "the defendant who distributed improperly attributed copyrighted material must have actual knowledge that CMI 'has been removed or altered without authority of the copyright owner or the law,' as well as actual or constructive knowledge that such distribution 'will induce, enable,

17

facilitate, or conceal an infringement.'" *Mango v. BuzzFeed, Inc.*, 970 F.3d 167, 171 (2d Cir. 2020). Thus, to state a claim under § 1202(b)(3) against Haralson, Bell must allege facts from which it may reasonably be inferred that, when Haralson retweeted Five-Star Basketball's post, he both knew that CMI had been removed without authority of the copyright owner or the law and knew or had reason to know that retweeting the post would induce, enable, facilitate, or conceal an infringement. Similarly, to state a claim against MPS, Bell must allege facts from which it may reasonably be inferred that MPS knew that CMI had been removed from the image Haralson retweeted and that MPS knew or had reason to know that not requiring Haralson to delete the retweet would induce, enable, facilitate, or conceal an infringement.

The complaint contains no allegations whatsoever suggesting that Haralson acted with double scienter. Indeed, the complaint limits the DMCA claim to MPS alone, in that it alleges only that that MPS (referred to in the complaint as "MWSB") "*allowed* its employees to publish tweets of the passage that lacked CMI." (Compl. ¶ 42 (emphasis added).) Thus, to the extent that Bell intended to state a DMCA claim against Haralson, that claim will be dismissed.

As for MPS, the complaint does little more than parrot the statutory language. The complaint alleges that MPS "allowed distribution of a work and/or copy of a work knowing that CMI had been removed or altered without authority of the copyright owner or the law," and that MPS "had reasonable grounds to know that the distribution would induce, enable, facilitate, or conceal an infringement of rights under the DMCA." (Compl. ¶¶ 44–45.) These are "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," and therefore do not state a claim. *Iqbal*, 556 U.S. at 678.

18

The only non-conclusory allegation in the complaint about MPS's knowledge is Bell's allegation that he sent cease-and-desist letters to MPS. (Compl. ¶¶ 4 & 23.) However, the complaint does not identify the contents of these letters. The complaint does not, for example, allege that the letters informed MPS that CMI had been removed from the version of the WIN passage shown in Haralson's retweet. Moreover, even if the letters had stated that CMI had been removed, it would not follow that MPS would have known that CMI had been removed. Unless the letters provided irrefutable proof that CMI had been removed, the letters would cause MPS to know only that Bell *believed* that CMI had been removed. But the first scienter element requires that the defendant *know* that CMI had been removed, not merely that the defendant *have reason to believe* that CMI had been removed. Because the cease-and-desist letters could do nothing more than give MPS reason to believe that CMI had been removed, they cannot support a DMCA claim.

In his brief in opposition to the motion to dismiss, Bell argues that it is reasonable to infer that the defendants acted with double scienter because they "knew they were not the author of the passage displayed on their social media and no author name was included." (Br. in Opp. at 11, ECF No. 15.) However, the lack of CMI on a copy of a work does not imply that CMI was affixed to the original and was later removed without permission of the author or the law. There are too many other possibilities. For example, the author might not have affixed CMI to the work in the first place. Or the work might not even be protected by copyright. It could, for example, be something in the public domain. Another possibility is that either the copyright owner or the law permitted the removal of CMI. *See* 17 U.S.C. § 1202(b)(3) (requiring knowledge that CMI was removed or altered "without authority of the copyright owner or the law"). Finally, I note that another district

19

court has likewise rejected Bell's argument that the double scienter requirement may be satisfied by "[s]imply stating that [the defendant] had to have known that someone in the world wrote this passage." *Worthington City Sch. Dist.*, 2020 WL2905803, at *15.

Accordingly, Bell's DMCA claims will be dismissed for failure to state a claim.

### 4.     Leave to Amend

When a district court dismisses a complaint for failure to state a claim, it must consider whether to grant the plaintiff leave to amend. *O'Boyle v. Real Time Resolutions, Inc.*, 910 F.3d 338, 346–47 (2018). The court need not grant leave to amend if it is certain that any amendments would be futile. *Id.* at 347.

In the present case, Bell has not requested leave to amend or suggested any way in which he could amend his complaint to state claims for copyright infringement and violation of the DMCA. Moreover, other courts have rejected Bell's similar claims against other school districts, and in doing so those courts flagged many of the key omissions that resulted in dismissal of Bell's claims in this case. For example, the Fifth Circuit emphasized Bell's failure to provide plausible grounds to believe that a school district's tweet could harm the market for Bell's works or their derivatives. *Eagle Mountain*, 27 F.4th at 325. And the district court in *Worthington City School District* pointed out that Bell had failed to provide evidence of the defendant's knowledge that CMI had been removed from the copies at issue. 2020 WL2905803, at *15. Because Bell has been on notice of these deficiencies in his claims but has not already addressed them in this case, I must assume that he is unable to allege the necessary facts. Accordingly, I find that granting leave to amend would be futile and will dismiss this action in its entirety.

20

**B.     Attorneys' Fees Under the Copyright Act**

Because defendants have prevailed, I must consider their motion for attorneys' fees under the Copyright Act. *See* 17 U.S.C. § 505. Unlike some fee-shifting statutes, such as those that apply to civil-rights claims, § 505 allows attorneys' fees to be awarded on an evenhanded basis to prevailing plaintiffs and prevailing defendants. *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994). However, a prevailing party is not automatically entitled to fees. Instead, "attorney's fees are to be awarded to prevailing parties only as a matter of the court's discretion." *Id.* in exercising its discretion, a district court must consider the purposes of the Copyright Act. *Id.* at 534 & n.19. Copyright's overarching purpose is "enriching the general public through access to creative works." *Kirtsaeng v. John Wiley & Sons, Inc.*, 579 U.S. 197, 204 (2016) (quoting *Fogerty*, 510 U.S. at 527). "The statute achieves that end by striking a balance between two subsidiary aims: encouraging and rewarding authors' creations while also enabling others to build on that work. Accordingly, fee awards under § 505 should encourage the types of lawsuits that promote those purposes." *Id.*

The Supreme Court has identified several nonexclusive factors that may be used to guide the district court's discretion. These include "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Fogerty*, 510 U.S. at 534–35 & n.19 (quoting *Lieb v. Topstone Indus., Inc.*, 788 F.2d 151, 156 (3d Cir. 1986)). Of these factors, the Supreme Court has identified objective reasonableness as a factor that should receive substantial weight. *Kirtsaeng*, 579 U.S. at 199–200. That said, "objective reasonableness can be only an important

21

factor in assessing fee applications—not the controlling one." *Id.* at 208. Ultimately, "courts must view all the circumstances of a case on their own terms, in light of the Copyright Act's essential goals." *Id.* at 209.

Here, taking all relevant circumstances into account, I conclude that the purposes of the Copyright Act are clearly furthered by awarding fees to defendants. Bell's suit does not in any way further the Act's goal of encouraging authors' creations. Instead, it is a product of Bell's practice of trawling the Internet in search of *de minimis* and harmless references to the WIN passage. It is immensely clear that the retweet caused no harm to Bell whatsoever and could not possibly deter authors from creating new works. In fact, Bell's behavior is akin to that of a copyright "troll": one who "bring[s] strategic infringement claims of dubious merit in the hope of arranging prompt settlements with defendants who would prefer to pay modest or nuisance settlements rather than be tied up in expensive litigation." *Design Basics, LLC v. Lexington Homes, Inc.*, 858 F.3d 1093, 1097 (7th Cir. 2017). Bell, of course, could not possibly earn legitimate revenue by licensing his work to school coaches who wish to celebrate or inspire student athletes by retweeting Twitter posts that reference the WIN passage. As noted above, the transaction costs associated with such licensing would be prohibitive. So Bell instead lies in wait and springs lawsuits on school districts whose employees retweet the passage, hoping that the school district will choose to settle rather than incur the costs of litigation. The Seventh Circuit has explicitly recognized that this kind of behavior is "far removed" from the goals of copyright law. *Id.* The Fifth Circuit has likewise recognized that Bell's "business model of litigation" is improper. *Eagle Mountain*, 27 F.4th at 326. In affirming a district court's award of fees against Bell, the court observed:

22

Bell is not the typical copyright plaintiff seeking "a fair return for [his] creative labor." He has a long history of suing public institutions and nonprofit organizations over *de minimis* uses of his work. Taking these cases into account, the district court reasonably concluded that Bell is a serial litigant, who makes exorbitant demands for damages in hopes of extracting disproportionate settlements. This case is another in the line.

*Id.* (citation and footnote omitted).

For these reasons, defendants' motion for attorneys' fees under the Copyright Act will be granted. To quantify the fee award, the defendants shall file a separate fee petition in accordance with Federal Rule of Civil Procedure 54(d)(2) within 14 days after the entry of judgment.

## C.    Sanctions

Finally, I consider defendants' motion for sanctions under Federal Rule of Civil Procedure 11 and 28 U.S.C. § 1927. The main targets of this motion are Bell's attorney and his attorney's law firm, but defendants also request sanctions against Bell personally. A represented party may be sanctioned under Rule 11, but not for advancing frivolous legal contentions. *See* Fed. R. Civ. P. 11(c)(1) & (5)(A). Further, a represented party may not be sanctioned under § 1927 at all. *Cooke v. Jackson Nat'l Life Ins. Co.*, 919 F.3d 1024, 1029 (7th Cir. 2019). Defendants request two forms of sanctions: (1) an order making Bell's attorney and his law firm jointly and severally liable for the attorneys' fees to be awarded under the Copyright Act, and (2) an order forbidding Bell from suing any public school or public-school employee for two years.

Defendants first contend that Bell's counsel should be sanctioned because he brought claims on behalf of Bell that were legally frivolous. *See* Fed. R. Civ. P. 11(b)(2). Here, defendants focus on the Fifth Circuit's *Eagle Mountain* decision and contend that it clearly established that any similar suit against a public school that tweeted an image of

23

the WIN passage would be frivolous.[6] This argument has some force, but ultimately I do not believe that sanctions are warranted for this reason. *Eagle Mountain* is not binding in the Seventh Circuit, and there are some nonfrivolous ways to distinguish it. For example, the school district in *Eagle Mountain* tweeted a version of the passage that was properly attributed to Bell, while MPS did not. Moreover, the school district in *Eagle Mountain* immediately deleted the post once Bell notified the school of his copyright, but Bell's attorney had reason to believe that MPS let the post remain up after receipt of Bell's copyright notice.[7] These facts are arguably relevant to the good-faith element of the fair-use defense and to the DMCA claim. As discussed above, these distinguishing characteristics do not produce a different outcome than in *Eagle Mountain*, but I do not believe that it was frivolous to argue otherwise. And again, *Eagle Mountain* is not binding in this circuit, so even if it were not arguably distinguishable, Bell's attorney could argue for a different result here without violating Rule 11(b)(2).

Defendants next contend that Bell's DMCA claim is based on an intentional factual misrepresentation. *See* Fed. R. Civ. P. 11(b)(3). Defendants note that the version of the WIN passage attached to the complaint as Exhibit 2 contains copyright management information—Bell's name, the copyright symbol, and the copyright date. They further note that the complaint alleges that MPS allowed Exhibit 2 to be posted without CMI. (Compl.

---

[6] Bell's attorney in the present case was not his attorney in *Eagle Mountain*.

[7] Bell has submitted an affidavit in which he states that he sent a cease-and-desist letter to MPS on February 24, 2019 (several days after Haralson's retweet), and that the retweet remained up until at least March 16, 2022. (Aff. of Keith Bell ¶¶ 3–4, ECF No. 15-3.) Defendants have submitted their own declaration in which they note that the original post by Five-Star Basketball has since been deleted and that this had the effect of deleting Haralson's retweet. (Decl. of Rishon Haralson ¶¶ 5–14, ECF No. 24.)

¶ 42.) The defendants contend that this allegation was false because any review of Bell's litigation history would reveal that Bell only recently began placing CMI on the WIN passage itself and that many versions of the passage exist that display no CMI. However, the existence of versions of the WIN passage without CMI does not make Bell's supposed allegation that someone removed CMI from the version retweeted by Haralson demonstrably false. We simply do not know whether the image on Twitter was derived from a version of the WIN passage that contained CMI or from one that did not. In any event, Bell's attorney submits an affidavit in which he states that Bell provided him with Exhibit 2 and that his purpose in attaching it to the complaint was to provide the court with a copy of the work at issue, not to mislead the court with respect to the existence of CMI. (Aff. of Jay Hamilton ¶¶ 2–5, ECF No. 23-4.) And that is how I understood the complaint's references to Exhibit 2: as a copy of the work, rather than as a representation that CMI was attached to all authorized copies of the WIN passage. Accordingly, I conclude that sanctions are not warranted against Bell's attorney.

The remaining issue is defendants' request that I prohibit Bell from filing another copyright suit against a public school or its employees for two years. Defendants contend that Bell's history of litigation shows that lesser sanctions, such as fee-shifting under the Copyright Act, have not deterred him from continuing to file frivolous litigation. Defendants also speculate that Bell may be judgment proof and that therefore fee-shifting awards will have no deterrent value. However, even if I had the power to enter the sanction defendants request,[8] I would not do so. As discussed above, although the merits of this

_____

[8] Defendants have not cited a case recognizing that a filing bar or an injunction against further lawsuits are proper sanctions under Rule 11. However, I recognize that the court

25

suit were always dubious and Bell must pay defendants' attorneys' fees, the suit is not completely frivolous. Indeed, at least one other district court has declined to dismiss a copyright claim filed by Bell against a high-school basketball coach that retweeted the same post as Haralson. *See Bell v. Crawford Indep. Sch. Dist.*, No. 6:19-CV-268-ADA, 2020 WL 5370592, at *1–4 (W.D. Tex. Feb. 13, 2020). Moreover, there is no evidence that Bell cannot or will not pay the attorneys' fees to be assessed in this case. Accordingly, defendants' request to enjoin Bell from filing suits against public schools and their employees will be denied.

## III. CONCLUSION

For the reasons stated, **IT IS ORDERED** that defendants' motion to dismiss the complaint for failure to state a claim (ECF No. 11) is **GRANTED**. The Clerk of Court shall enter final judgment.

**IT IS FURTHER ORDERED** that defendants' motion for attorneys' fees under the Copyright Act (ECF No. 11) is **GRANTED**. To quantify the fee award, defendants shall file a separate fee petition in accordance with Federal Rule of Civil Procedure 54(d)(2) within 14 days after the entry of judgment.

**FINALLY, IT IS ORDERED** that defendants' motion for sanctions (ECF No. 16) is **DENIED**.

---

has inherent authority to enter filing bars when warranted. *See Support Systems Int'l, Inc. v. Mack*, 45 F.3d 185, 186–87 (7th Cir. 1995). But what the defendants are requesting is an anti-suit injunction, not merely a fling bar. A filing bar does not enjoin a party from filing lawsuits in other courts but instead directs the clerk of the issuing court to return unfiled any documents presented to that court for filing. *See id.* at 187.

Dated at Milwaukee, Wisconsin, this 21st day of December, 2022.

/s/Lynn Adelman
LYNN ADELMAN
United States District Judge

27